**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES BRANDON GRISWOLD, DENNIS HULSE, and JAMIE M. OLIVA, on behalf of themselves and all other persons denied admission to the Port Authority Police Academy for the Port Authority of New York and New Jersey, and specifically including those in the 107th, 108th, 109th and 110th classes of applicants, so similarly situated, | Civil Action No. 08-01839 (SDW) |

Civil Action No. 08-01839 (SDW)

                        Plaintiffs,

            v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et. al.,

                        Defendants.

**OPINION**

September 14, 2009

**WIGENTON**, **District Judge**

Pending before this Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by the Port Authority of New York and New Jersey, Doris Francis, Ph.D., Robin Martin, Lillian Valenti, and Martin Duke, M.D. ("Defendants").  Also pending is a Motion to Certify a Class pursuant to Federal Rule of Civil Procedure 23(a) brought by James Brandon Griswold, Dennis Hulse, and Jamie M. Oliva ("Plaintiffs").  The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

## I.    Factual Background and Procedural History

The Port Authority of New York and New Jersey ("the Port Authority") is a bi-state governmental entity created by an interstate compact between the States of New York and New Jersey with approval by Congress. N.J. Stat. Ann. § 32:1-1 *et seq*.  As part of its statutory authority, the Port Authority employs its own police force. *Id*. § 32:2-25.  On a periodic basis,

the Port Authority administers a competitive examination to applicants seeking to be Port Authority police officers.  (Compl. ¶ 19.)  Applicants who score high enough on the competitive examination are deemed eligible for possible admission to the Port Authority Police Academy and are subjected to an examination of educational credentials and background checks.  (*Id*. ¶ 20.)  Upon satisfactory completion of the background checks and credential examination, each applicant is asked to submit to several medical and psychological assessments and tests.  (*Id*. ¶ 22.)  Psychological tests administered to the applicants include the Minnesota Multiphasic Personality Inventory ("MMPI"), the Law Enforcement Assessment and Development Report ("LEADR Report"), the Cornell Index, and the Human Figure Drawing test.  (*Id*. ¶ 33.)

The MMPI is used by psychologists to diagnose and treat individuals with abnormal psychological symptoms and personality traits.  It consists of over 500 true or false questions requiring each applicant to answer "true" or "false" to numerous personal questions related to religious convictions or practices, medical conditions, and sexuality.  (*Id*. ¶¶ 34-35.)  Examples of questions asked include: "I believe in a life hereafter;" "I deserve punishment for my sins;" "I am troubled by attacks of nausea and vomiting;" "I am bothered by an upset stomach several times a week;" "I have never indulged in any unusual sex practices;" "I wish I were not bothered by thoughts about sex;" and "I have often wished I were a member of the opposite sex."  (*Id*. ¶ 35.)

The Cornell Index is designed to identify persons with serious personality disturbances and requires a response of "Yes" or "No" to personal questions.  (*Id*. ¶ 39.)  The Human Figure Drawing test is used to measure personality functions and to identify previous sexual abuse or emotional disturbances based on an analysis and evaluation of the test-taker's drawing of a human figure.  (*Id*. ¶ 41.)  Finally, the LEADR Report requires applicants to answer over 300

personal questions which are used to evaluate personality characteristics to identify individuals who have the potential to become successful law enforcement officers.  (*Id*. ¶ 45.)

Plaintiffs all applied for admission to the Port Authority Police Academy.  Griswold and Oliva were applicants for admission to the 109th academy class.  (*Id*. ¶¶ 6, 8.)  Hulse was an applicant to the 107th class.  (*Id*. ¶ 7.)  All three Plaintiffs took and passed the Port Authority's competitive examination and were provided with conditional offers of employment as Port Authority police officers.  These offers were contingent upon their successful completion of the medical and psychological evaluation phases.  (*Id*. ¶ 23.)  Plaintiffs voluntarily submitted to medical and psychological evaluations conducted by the Port Authority's Office of Medical Services.  In a letter dated August 7, 2007, Griswold and Olivia were notified that the Port Authority Office of Medical Services was "unable to certify" them for appointment to the position of police officer.  (*Id*. ¶ 24.)  Hulse received a similar letter dated May 26, 2006.  (*Id*. ¶ 25.)  Plaintiffs were subsequently informed that they could not be certified due to unsatisfactory scores on the psychological evaluations.  Griswold, Hulse, and Oliva subsequently completed independent psychological testing, which found them suitable to work in law enforcement.  (*Id*. ¶ 32.)

Plaintiffs filed their Complaint on April 14, 2008 on their own behalf and on behalf of all others denied admission to the Port Authority Police Academy in the 107th, 108th, 109th and 110th applicant classes.  In addition to the Port Authority, Plaintiffs have named as Defendants Doris Francis, Ph.D., a psychologist employed by the Port Authority; Lillian Valenti, the Port Authority's former Director of Medical Services; Robin Martin, the Port Authority's former Medical Operations Manager; and Martin Duke, M.D., the Port Authority's Chief Medical

Officer.  Plaintiffs generally allege that the Port Authority violated their rights under the First

and Fourteenth Amendments to the United States Constitution by:

> [I]mproperly administering and erroneously evaluating a battery of
> otherwise onerous, unreliable, invalid and archaic psychological testing
> and other non-job related evaluations all of which require applicants to
> answer and respond to highly invasive, personal and offensive questioning
> as a condition of employment, all of which probe into private thoughts,
> beliefs and innermost feelings of the applicants, and require them to
> disclose their sexual practices, religious beliefs, medical conditions and
> sexual orientation . . . .

(*Id*. ¶ 1.)  Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, the New Jersey Constitution,

and common law tort.

More specifically, Count One of the Complaint alleges that the Port Authority's

administration of psychological testing as part of its selection process for police officers violates

Plaintiffs' privacy and liberty rights under the Fourteenth Amendment to the United States

Constitution.  (*Id*. ¶¶ 58-69.)  Plaintiffs claim that the Port Authority's use of the MMPI, Cornell

Index, LEADR Report and Human Figure Drawing psychological evaluations is "not narrowly

tailored to and/or in furtherance of any legitimate governmental or state interest . . . ."  and

"bear[s] no rational or relevant relationship to an applicant's ability to competently . . . perform

the essential functions of the position of a Port Authority Police Officer."  (*Id*. ¶¶ 49-50.)  The

Complaint also alleges that applicants to the Port Authority Police Academy are

unconstitutionally required "to divulge information that is protected in the realm of . . .  marital,

familial and personal sanctity."  (*Id*. ¶ 59.)  Plaintiffs allege that Defendants violated their

privacy and liberty rights by "intruding into the off-duty private lives and conduct of Plaintiffs . .

.; engaging in an overly broad collection and retention of unnecessary personal information about

Plaintiffs . . . ; [and] disseminating the results of the psychological and medical examinations to

others."  (*Id*. ¶ 61.)

4

Count Two alleges violations of Plaintiffs' substantive due process rights under the Fourteenth Amendment and contains many verbatim recitations of the allegations asserted in Count One.  (*See, e.g*. *Id*. ¶ 72.)  In Count Three, Plaintiffs allege that the psychological testing is a violation of their First Amendment rights of freedom of expression and association.  (*Id*. ¶¶ 79-86.)  Specifically, Plaintiffs allege that the testing procedures inhibit free speech by compelling answers to personal and private religious and political questions.  Questions identified by the Plaintiffs as particularly problematic include "My soul sometimes leaves my body"; "I believe in a life hereafter"; "Sometimes in elections, I vote for people about whom I know very little"; and "I have strong political opinions."  (*Id*. ¶¶ 81-82.)  Because of their answers, Plaintiffs claim they "were improperly denied employment opportunities with the Port Authority based on their religious and/or political beliefs and opinions" expressed in their answers to these questions.  They also allege that the tests had the effect of "chilling Plaintiffs' desire to freely express [themselves] during both the periods of testing and during [their] everyday affairs."  (*Id*. ¶¶ 84-85.)   In Count Four for Invasion of Privacy, Plaintiffs claim that the Port Authority's psychological testing policy is a tortious invasion of privacy that intrudes into matters that they have a right to keep private.  (*Id*. ¶¶ 87-91.)  Finally, Count Five alleges that the Port Authority's psychological testing violates Plaintiffs' right to privacy under Article I, Section I of the New Jersey Constitution.  (*Id*. ¶¶ 92-98.)  Plaintiffs seek compensatory and punitive damages, as well as injunctive relief to preclude the Port Authority from conducting psychological testing as part of its application process for new police recruits.

## II.   Jurisdiction and Venue

This Court has jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Plaintiff's state-based claims.  *See* 28 U.S.C. § 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III.   Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holding Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

6

> on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1937 at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.* at 1950, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## IV.   Discussion

### A.  Establishing a Claim Under 42 U.S.C. § 1983

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Hence, the two "essential elements" of a § 1983 claim are "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)); *see also Phillips*, 515 F.3d at 235. Defendants do not dispute that their actions were performed under the color of state

law.  Therefore, the critical issue is whether the Port Authority's administration of psychological testing procedures deprived Plaintiffs of "rights, privileges, or immunities secured by the Constitution or the laws of the United States."  *Parratt*, 451 U.S. at 535.

### B.  Property and Liberty Interests Under the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n. 12 (3d Cir. 2006) (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000)); *see Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 570-71 (1972) ("[T]o determine whether due process requirements apply in the first place . . . [the Court] must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property.")

### 1.  Property Interest

"[F]or a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution."  *Hill*, 455 F.3d 235 n.12.  Public employment is not a fundamental right.  *Id*.  In *Elmore v. Cleary*, 399 F.3d 279 (3d Cir. 2005), the Third Circuit explained that in order "[t]o have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment."  399 F.3d at 282; *see also Roth*, 408 U.S. at 577.  In order for the Plaintiffs' claim to succeed, therefore, they must show that they had a legitimate claim of entitlement to employment as Port Authority Police officers.  Here, however, Plaintiffs "were never more than applicants for employment . . . ."  *Anderson v. City of*

8

*Philadelphia*, 845 F.2d 1216, 1220 (3d Cir. 1988).  While the Port Authority placed Plaintiffs on an eligibility list and gave them conditional offers of employment contingent upon the outcome of their psychological tests, those offers "entitled the [P]laintiffs to nothing more than consideration for employment."  *Id.* at 1220-21.  The Port Authority was "by no means bound to hire the plaintiffs."  *Id.*  "[T]here can be no tenable claim of entitlement to employment" and, therefore, no violation of a constitutionally protected property interest when a plaintiff possesses no more than the mere expectation of public employment.  *Id.* at 1221.  Furthermore, the Third Circuit has "held explicitly that public employment is not a fundamental right entitled to substantive due process protection."  *Hill*, 455 F.3d at 235 n. 12 (citing *Nicholas*, 227 F.3d at 142-43).  Similarly, in *Pollock v. City of Ocean City*, 968 F. Supp. 187 (D.N.J. 1997) the Court held that "[o]ne who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment.  The only benefit inuring to such a person is that so long as the eligible list remains in force, no appointment can be made except from that list."  968 F. Supp. at 190 (citing *Schroder v. Kiss*, 74 N.J. Super. 229, 240 (Super. Ct. App. Div 1962)).

In addition, Plaintiffs do not cite to any state statute "which sets an objective standard for the hiring or rejection of applicants from . . . eligibility lists and which might thereby create a legitimate claim of entitlement to employment."  *Anderson*, 845 F.2d at 1221 (finding that applicants who were denied positions with the Philadelphia Police Department because they failed to pass polygraph examinations had no legitimate claim of entitlement to employment because hiring decisions "involve[d] considerable discretionary decision making").  In fact, the New Jersey Administrative Code, which sets the standard for civil service hiring in New Jersey, grants government agencies such as the Port Authority broad discretion in their hiring practices

and procedures.[1]  The Port Authority Office of Medical Services found Plaintiffs to be ineligible

due to unsatisfactory performance on their psychological examinations.  Because there is nothing

in the Port Authority's hiring practices or in the New Jersey Administrative Code that creates an

entitlement to employment as Port Authority Police officers, the Plaintiffs' mere expectation of

employment cannot be said to have "rise[n] to the level of a property interest protected by the

Constitution."  *Anderson*, 845 F.2d at 1221.

### 2.  Liberty Interest

It is not entirely clear from the Complaint exactly what "liberty rights" (Compl. at 16)

Plaintiffs allege that the Port Authority violated.  For example, the Complaint confusingly

alleges that "[t]he impact of the psychological evaluation processes, procedures and criteria, and

as applied by the Defendants, on the privacy interests of the Plaintiffs . . . burdens a liberty

interest under the Fourteenth Amendment."  (Compl. ¶ 64.)  To the extent that the Complaint can

be construed as alleging that Plaintiffs had a constitutionally-protected liberty interest in

employment as Port Authority Police Officers, that claim fails.  As the Supreme Court has

explained, "liberty":

> . . . denotes not merely freedom from bodily restraint but also the right of the
> individual to contract, to engage in any of the common occupations of life, to
> acquire useful knowledge, to marry, establish a home and bring up children, to
> worship God according to the dictates of his own conscience, and generally to
> enjoy those privileges long recognized at common law as essential to the
> orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  The Third Circuit has explicitly held that "[i]t is

the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by

the Fourteenth Amendment."  *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259-60 (3d Cir. 1994)

---

[1] The New Jersey Administrative Code provides, in pertinent part, that "(a) A person may be denied examination eligibility or appointment when he or she: 1. Lacks the job requirements; 2. Is ineligible, by law for employment in the title; 3. Is physically or *psychologically* unfit to perform effectively the duties of the title[, or] . . . 4. Has failed to pass examination procedures[] . . . ."  N.J. Admin. Code § 4A:4-6.1 (2009) (emphasis added).

(citing *Bernard v. United Twp. High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993) (internal quotations omitted)).   Rejection from the Port Authority Police Academy does not prevent Plaintiffs from pursuing alternative careers in law enforcement.   They are not threatened with losing their right to apply to and serve as members of other police forces within the State of New Jersey or elsewhere.   Put simply, the Port Authority's actions do not curtail the Plaintiffs' "liberty to pursue a calling or occupation" within the meaning of the Fourteenth Amendment.

Another possible (and generously liberal) reading of the Complaint could suggest that Plaintiffs allege that by failing to hire them based on their psychological test results, the Port Authority so damaged their reputation in the community as to preclude them from further employment.   This claim is also without merit.   The Third Circuit has held that:

> An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community' . . . or (2) 'impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities.'

*Robb v. City of Phila.*, 733 F.2d 286, 294 (3rd Cir. 1984) (quoting *Roth*, 408 U.S. at 573).   In addition, "a plaintiff must plead that the allegedly stigmatizing information was 'published' or otherwise disseminated by his government employer to the public." *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3rd Cir. 1988) (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976)).   In *Bishop v. Wood*, the Supreme Court held that when the reasons for a police officer's discharge were communicated privately to the officer and where "the . . . communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation,

honor, or integrity' was thereby impaired."  *Bishop*, 426 U.S. at 348 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (internal citations omitted)).[2]

In this case, Plaintiffs allege that "Defendants . . . disseminat[ed] the results of the psychological and medical examinations to others, including unlicensed, untrained employees, agents and/or administrators of the Defendants for no legitimate or proper purpose."  (Compl. ¶ 61.)  Despite these allegations, Plaintiffs have not alleged any fact to suggest that their rejection stigmatized them in any way.  Nor have they alleged that the reasons for their rejection were disseminated to the public at-large.  In fact, Plaintiffs acknowledge that even they were never informed of the reasons they were not hired until they specifically requested that information. (Comp. ¶ 27.)  *See Chabal*, 841 F.2d at 1223 (noting that plaintiff was never informed of the reasons for his discharge as a United States Marshall).  Hence, Plaintiffs have failed to state a claim for a violation of a constitutionally-protected liberty interest.

**C.  Procedural Due Process**

Although Plaintiffs' second cause of action is labeled "Violation of Substantive Due Process Rights under the 14th Amendment," the allegations suggest that they also seek recovery for a procedural due process violation.  For example, the Complaint alleges that Plaintiffs "were not afforded an appeal or hearing (Compl. ¶ 76) and that the "internal appeals process is biased and inadequate" (*Id*. ¶ 77).  In order to state a claim for deprivation of procedural due process rights, a plaintiff must prove "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law."  *Hill*, 455 F.3d at 233-34.  Because Plaintiffs cannot establish that that their interest in obtaining employment as Port

---

[2] It is important to note that *Robb*, *Chabal*, and *Bishop* all involved a public employee who was terminated from a position he or she already held.  Here, the liberty interest is even more attenuated because Plaintiffs only had conditional offers of employment.

12

Authority Police Officers is a protected life, liberty, or property interest, any claim for procedural

due process must fail.

### D.  Privacy Interest and First Amendment Violations

The fact that Plaintiffs do not have a constitutionally-protected property or liberty interest

in a position as Port Authority Police Officers does not end our inquiry.  The Complaint also

alleges that the Port Authority's administration of the MMPI required Plaintiffs to answer

questions which infringed on their right to privacy.  The Supreme Court has recognized that the

constitutional right to privacy serves to protect two types of interests: "'One is the individual

interest in avoiding disclosure of personal matters, and another is the interest in independence in

making certain kinds of important decisions.'"  *Fraternal Order of Police, Lodge No. 5 v. City of

Phila.*, 812 F.2d 105, 109 (3d Cir. 1987) (quoting *Whalen v. Roe,* 429 U.S. 589, 599-600 (1977).

The latter interest encompasses "'matters relating to marriage, procreation, contraception, family

relationships, and child rearing and education.'"  *Id*.  (citing *Paul v. Davis*, 424 U.S. 693, 713

(1976)).  "'In determining whether information is entitled to privacy protection, [the Third

Circuit] ha[s] looked at whether it is within an individual's reasonable expectations of

confidentiality.  The more intimate or personal the information, the more justified is the

expectation that it will not be subject to public scrutiny."  *Fraternal Order of Police*, 812 F.2d at

112-113; *C.N. v. Ridgewood Bd. of Educ*., 430 F.3d 159, 179 (3d Cir. 2005).  In applying this

standard, the Third Circuit has recognized a variety of information which is protected by a right

to privacy, including "a private employee's medical information when sought by the

government; medical, financial and behavioral information relevant to a police investigator's

ability to work in dangerous and stressful situations; a public employee's medical prescription

13

record; a minor student's pregnancy status, sexual orientation, and an inmate's HIV-positive status." *C.N.*, 430 F.3d at 179 (internal citations omitted).

In *Fraternal Order of Police*, the Third Circuit analyzed the constitutionality of a questionnaire used in selecting applicants to the special investigations unit of the Philadelphia Police Department. The questionnaire included open-ended questions regarding an applicant's medical history, financial information, and behaviors including gambling and alcohol consumption. 430 F.3d 159 at 112–116. In that case, the Court reiterated that "there is no absolute protection against disclosure. Disclosure may be required if the government interest in disclosure outweighs the individual's privacy interest." 430 F.3d 159 at 110 (citing *Trade Waste Management Ass'n, Inc. v. Hughey*, 780 F.2d 221, 234 (3d Cir.1985)). Instead, a flexible balancing test applies.

> "The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access."

*Id*. (quoting *United States v. Westinghouse Electric Corp*., 638 F.2d 570, 577 (3d Cir.1980)).

Unfortunately, neither Defendants nor Plaintiffs' brief attempts to analyze these factors or even acknowledges them. Instead, Plaintiffs rely primarily on *McKenna v. Fargo*, 451 F. Supp. 1355 (D.N.J 1978) to support their argument that their claims should withstand Defendants' Motion. In *McKenna*, applicants for the position of fire fighter in Jersey City brought a § 1983 claim challenging the constitutionality of the City's requirement that applicants undergo psychological testing (namely the MMPI examination) to determine their suitability for the position. The Court held that the fact that the psychological tests dealt with religious, political,

14

and social beliefs and with sexual preferences and familial relationships did not render the testing

unconstitutional under either the Fourteenth or the First Amendment.  The Court stated:

> There is sufficient support to conclude that the psychological evaluation
> and hiring procedure taken as a whole is useful and effective in identifying
> applicants whose emotional make-up makes them high risk candidates for
> the job of fire fighting. Because fire fighting, like police work, involves
> life-endangering situations, the State interest is of the highest order.
> Plaintiffs lose sight of the fact that a fireman who loses emotional control
> endangers his own life as well as those of other firemen. While a
> psychological evaluation intrudes on an applicant's privacy, it may save
> him from the risk of losing his life. The life of a community, as well,
> depends, at the most basic level, on those whose job it is to protect the
> community from physical forces, like fire, that have escaped from the
> control that makes them productive

*McKenna*, 451 F. Supp. at 1381 (internal citations omitted).  The Court's analysis in *McKenna* is

compelling and may ultimately prevail, especially considering that the MMPI has been

recognized as "the most accepted psychological test which is largely objective requiring little

subjective interpretation."  *Bertaut v. U.S.*, 852 F. Supp. 523, 527 (E.D. La. 1994).  However,

*McKenna* was decided before the Third Circuit's decisions in *Westinghouse* and *Fraternal Order*

*of Police*.  Because the Port Authority has not addressed the balancing factors this Court must

employ to determine whether the MMPI—as administered by the Port Authority—might infringe

on Plaintiffs' privacy rights, the Motion to Dismiss must be denied as to Count Four.

Similarly, the Port Authority has not addressed whether Plaintiffs' allegations that certain

questions on the MMPI might violate Plaintiffs' First Amendment rights.  Instead, the Port

Authority concentrates its arguments on the fact that Plaintiffs "do not have a constitutionally

protected right to employment with the Port Authority."  (Defs.' Reply Br. 4.)  However, "a

distinction exists between the entitlement to a benefit that gives rise to a property interest

protected under the fourteenth amendment due process clause and a benefit that is protected

under the first amendment."  *Robb*, 733 F.2d at 296 (citing *Perry v. Sindermann*, 408 U.S. at 597

(1972)).  Because this issue was not addressed, the Motion to Dismiss is denied with respect to

Count Three of the Complaint.

### E.  Plaintiffs's State Law Claims

The Port Authority argues that Plaintiffs' state-based claims for Invasion of Privacy and

for violations of the New Jersey State Constitution should be dismissed for failure to comply

with the statutory requirements to bring suit against it.  Prior to 1950, the Port Authority, as a bi-

state agency of New Jersey and New York, "enjoyed complete sovereign immunity from suits of

any sort in the courts of those states."  *Campanello v. Port Auth. of N.Y. & N.J.*, 590 F. Supp. 2d

694, 701 n.10 (D.N.J. 2008) (internal quotations omitted).  The Port Authority waived its

immunity by statutes in both states, subject to certain conditions.  In New Jersey, a suit may be

brought against the Port Authority:

> [U]pon the condition that any suit, action or proceeding prosecuted or
> maintained under this act shall be commenced within one year after the
> cause of action therefor shall have accrued, and upon the further condition
> that in the case of any suit, action or proceeding for the recovery or
> payment of money, prosecuted or maintained under this act, a notice of
> claim shall have been served upon the Port Authority by or on behalf of
> the plaintiff or plaintiffs at least sixty days before such suit, action or
> proceeding is commenced.

N.J. Stat. Ann. § 32:1-163.  As the New Jersey Appellate Division has explained, "[a]s an act in

derogation of the common law, these requirements must be strictly construed as conditions

precedent to the bringing of suit.   Unlike a statute of limitations, the requirements are

jurisdictional."  *Matthews v. Port of N.Y. Auth.,* 163 N.J. Super. 83, 85, 394 A.2d 172 (Law Div.

1978), *aff'd,* 171 N.J. Super. 38 (App. Div.1979); *Mullen v. Port Auth. of N.Y. & N.J.*, 100 F.

Supp. 2d 249, 254–55; *see also Brown v. Port Auth. Police Superior Officers Ass'n*, 283 N.J.

Super. 122, 131–134 (App. Div. 1995) ("[A]ny suit against the Port Authority for money

16

damages . . . is subject to the procedural prerequisites of N.J.S.A. 32:1-163, including the requirement that a notice of claim be served at least sixty days before suit is filed.").

Plaintiffs do not dispute that they failed to file a Notice of Claim within 60 days of the accrual of their state-based claims.  However, they argue that the requirements of § 32:1-163 do not apply because they seek declaratory and equitable relief.  The Complaint makes clear that Plaintiffs "have been irreparably harmed and suffered *financial loss*, including lost wages, emotional distress, loss of reputation, and loss of enjoyment of life."  (Compl. ¶ 69; *see also* ¶¶ 78, 86, 90, 97) (emphasis added).  Accordingly, Plaintiffs are barred from seeking monetary damages for their Fourth and Fifth causes of action because they have not complied with N.J.S.A. § 32:1-163.

### F.  Plaintiffs' Motion to Certify a Class

Plaintiffs have moved separately to certify a class "of all past, present, and future applicants for employment with the PAPD who were required or in the future will be required to undergo purported psychological testing and questioning."  Federal Rule of Civil Procedure 23 directs that a decision to certify a class be made "at an early practicable time."  Fed.R.Civ.P. 23(c)(1)(a).  Now is not that time.  This is particularly true because there remain issues of law related to the Complaint that must be addressed and the Court anticipates additional briefing will be required.  In addition, Plaintiffs' Motion is based solely on the Complaint and is not supported by any documentation, affidavits, or other evidence to suggest that the proposed class meets the requirements of Rule 23(a).  *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir.2001) ("[I]t may be necessary for the Court to probe behind the pleadings before coming to rest on the certification question.").  Therefore, Plaintiffs' Motion is DENIED as premature.

17

**V.** **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as to allegations for violations of Plaintiffs' Liberty and/or Property Interests; DENIED as to allegations for violations of Plaintiffs' privacy and First-Amendment rights; and GRANTED as to monetary damages sought under Counts Five and Six of the Complaint.  Plaintiffs' Motion to Certify a Class is DENIED.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.